Emily Burkhardt Vicente (State Bar No. 263990)
ebvicente@Hunton.com
Michael A. Pearlson (State Bar No. 329757)
mpearlson@Hunton.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213-532-2000
Facsimile: 213-532-2020

*Attorneys for Defendant*
TFORCE FREIGHT, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL DELGADO, individually, and on behalf of other similarly situated employees,<br><br>      Plaintiff,<br><br>v.<br><br>TFORCE FREIGHT, INC.; and DOES 1 through 25, inclusive,<br><br>      Defendants. | Case No. 3:25-CV-10411<br><br>[Removed from Alameda County Superior Court, Case No. 25CV151115]<br><br>**DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446, AND 1453**<br><br>[*Filed concurrently with Corporate Disclosure Statement; Certification of Conflicts and Interested Entities or Persons; and Certificate of Service*]<br><br>Complaint Filed:   October 24, 2025 |

*(sidebar)* Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**

2  **THE NORTHERN DISTRICT OF CALIFORNIA:**

3      **PLEASE TAKE NOTICE** that Defendant TFORCE FREIGHT, INC.

4  ("TForce") hereby removes the state court action described below to this Court pursuant

5  to 28 U.S.C. §§ 1331, 1332(d), 1367, 1441, 1446, and 1453. In support thereof, TForce

6  states as follows:

7      1.    On October 24, 2025, Plaintiff Gabriel Delgado ("Plaintiff") filed a lawsuit

8  in the Superior Court of Alameda County, California as Case No. 25CV151115 (the

9  "State Action" or "Class Action").

10      2.    On November 4, 2025, Plaintiff served TForce's registered agent for

11  service of process with copies of the Summons and Complaint. Pursuant to 28 U.S.C. §

12  1446(a), a true and correct copy of the Summons and Complaint is attached as **Exhibit**

13  **A**.

14      3.    As explained below, the State Action is one that may be removed to this

15  Court because TForce has satisfied the procedural requirements for removal and this

16  court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441,

17  1446, and 1453.

18      4.    Pursuant to *Dart Cherokee Basin Operating Company, LLC v. Owens*, 574

19  U.S. 81, 87-89 (2014), TForce's notice of removal need include only a plausible

20  allegation that the requirements for jurisdiction exist and does not need to contain

21  evidentiary submissions.

22      **TFORCE HAS SATISFIED THE PROCEDURAL**

23      **REQUIREMENTS FOR REMOVAL**

24      5.    TForce was served with the Complaint on November 4, 2025 through its

25  registered agent. TForce's Notice of Removal is, therefore, timely because it is filed

26  within 30 days of the date of service of the Complaint. *See* 28 U.S.C. § 1446(b).

27

28

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

6.     TForce removes this action to the United States District Court for the Northern District of California because Plaintiff filed the State Action in this judicial district. *See* 28 U.S.C. § 1441(a).

7.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon TForce, are attached as follows:

   a.     **Exhibit A** – Plaintiff's Summons and Complaint;

   b.     **Exhibit B** – Other Process, Pleadings, and Orders;

   c.     **Exhibit C** – TForce's Answer.

8.     Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal is being served upon Plaintiff's counsel and a copy is being filed with the Clerk of the Superior Court for the State of California, County of Alameda.

## REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION

**A.     This Court Has Federal Question Jurisdiction**

9.     This Court has federal question jurisdiction over Plaintiff's claims because one or more of Plaintiff's state law claims are completely preempted by the Labor Management Relations Act of 1947, 29 U.S.C. § 141, *et seq.* ("LMRA").

10.     Pursuant to Section 301(a) of the LMRA, federal jurisdiction lies where an action is brought "for violation of contracts between an employer and a labor organization representing employees[.]" 29 U.S.C. § 185(a).

11.     As the Ninth Circuit has repeatedly held, if a state law claim is either (1) based directly on rights created by a collective bargaining agreement or (2) substantially dependent on analysis of a collective bargaining agreement, it is a federal claim and is completely preempted. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152-53 (9th Cir. 2019) (noting that § 301 has "extraordinary pre-emptive power" and that "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court").

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

### 1. The Terms And Conditions Of Plaintiff's Employment Were Governed By Collective Bargaining Agreements

12.    Plaintiff was employed by TForce as a Mechanic Journeyman. During his employment, Plaintiff was represented by the International Association of Machinists ("IAM") and was a member of a collective bargaining unit.

13.    The terms and conditions of Plaintiff's employment are set forth in the 2024-2029 TForce Freight IAM Agreement between TForce and IAM ("2024-2029 TForce Agreement") (**Exhibit D**, hereto).

14.    During portions of the relevant statutory time period, the terms and conditions of Plaintiff's employment were set forth in a predecessor collective bargaining agreement, the 2019-2024 UPS Freight IAM & AW Agreement between TForce and IAM ("2019-2024 UPS Freight Agreement") (**Exhibit E**, hereto). TForce is the successor company to UPS Freight and assumed the obligations of this collective bargaining agreement.

### 2. Plaintiff's Claim For Untimely Payment Of Wages Is Preempted By Section 301 Of The LMRA

15.    Plaintiff's fifth cause of action for alleged violation of Labor Code § 204 (wages not timely paid during employment) "exists solely as a result of [his] CBA" and is therefore preempted under Section 301 of the LMRA. *See Curtis*, 913 F.3d at 1152.

16.    Labor Code § 204(a) provides, in pertinent part, "[a]ll wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as regular paydays." Subsection (b) further provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Lab. Code § 204(b); *see also* Compl. ¶¶ 70-72.

17.    However, Labor Code § 204(c) provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements,

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

1    *those arrangements shall apply to the covered employees*." Lab. Code § 204(c)
2    (emphasis added).

3        18.    In this case, Articles 11 of the 2024-2029 TForce Agreement and 2019-
4    2024 UPS Freight Agreement provide in part, "Employees shall be paid in full each
5    week on pay periods occurring on a day established by the Company, in the week
6    following the week worked." A CBA-requirement to pay wages weekly is necessarily
7    different from the default rule of semi-monthly payment under California Labor Code
8    § 204(a). *Carrillo v. Monterey Mech. Co.*, 2025 WL 1642423, at *8 (N.D. Cal. June 10,
9    2025).

10        19.    Claims for violation of Labor Code § 204 are preempted where the CBA
11    provides for different timing rules compared to Section 204(a)'s default timing. *See,*
12    *e.g.*, *Carrillo*, 2022 WL 17834201, at *8; *Landy v. Pettigrew Crewing, Inc.*, 2019 WL
13    6245525, at *4 (C.D. Cal. Nov. 22, 2019) ("After the statute lists the default rule for the
14    timing of wage payments in subsections (a) and (b), subsection (c) begins with the word
15    '[h]owever,' indicating that the default rule does not apply if the remainder of
16    subsection (c) is met, i.e., where a CBA provides different pay arrangements."). Thus,
17    in cases like this, "the right to timely wages during employment is conferred not by
18    California Labor Code § 204, but the CBAs." *Rodriguez v. USF Reddaway Inc.*, 2022
19    WL 18012518, at *5 (E.D. Cal. Dec. 30, 2022).

20        20.    Because Plaintiff was subject to a collective bargaining agreement that
21    provides a different pay arrangement for payment of wages during employment,
22    Plaintiff's fifth cause of action under Labor Code § 204 is preempted under Section 301
23    of the LMRA, and this Court has subject matter jurisdiction over this action pursuant to
24    28 U.S.C. § 1331.

25        **3.    Plaintiff's Overtime Claim Is Preempted By Section 301 Of**
26        **The LMRA**

27        21.    Plaintiff's second cause of action for allegedly unpaid overtime
28    compensation under Labor Code § 510(a)(1) also "exists solely as a result of [his] CBA"

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

4

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1   and is therefore preempted under Section 301 of the LMRA. *See Curtis*, 913 F.3d at
2   1152.

3       22.     Specifically, Section 510(a) provides, in pertinent part, that the
4   "requirements of [Section 510(a)] do not apply to the payment of overtime
5   compensation to an employee working pursuant to . . . (2) An alternative workweek
6   schedule adopted pursuant to a collective bargaining agreement pursuant to Section
7   514." Labor Code § 510(a)(2).

8       23.     Section 514, in turn, states that Section 510(a) does "not apply to an
9   employee covered by a valid collective bargaining agreement if the agreement expressly
10  provides for the wages, hours of work, and working conditions of the employees, and
11  if the agreement provides premium wage rates for all overtime hours worked and a
12  regular hourly rate of pay for those employees of not less than 30 percent more than the
13  state minimum wage." Labor Code § 514.

14      24.     Overtime claims from employees subject to a "qualifying CBA" that "meet
15  the requirements of Section 514" are preempted under Section 301 of the LMRA.
16  *Curtis*, 913 F.3d at 1153-54; *Huerta v. Doubletree Emp. LLC*, 2024 WL 890548, at *3
17  (C.D. Cal. Mar. 1, 2024) (subject matter jurisdiction exists over overtime-related claims
18  because the CBA fulfills the requirement of Section 514 "as to many of Defendants'
19  employee classifications"); *Herrera v. Swift Beef Co.*, 2023 WL 8455026, at *1 (C.D.
20  Cal. Dec. 5, 2023) (overtime claim provides a basis for subject matter jurisdiction);
21  *Rodriguez v. S E Pipeline Constr. Co.*, 2023 WL 9319043, at *3 (C.D. Cal. Dec. 1,
22  2023) ("Because Rodriguez is exempt from the overtime provisions of the California
23  Labor Code, his overtime claim rests on a right created entirely by the CBA [… and] is
24  therefore preempted by § 301 of the LMRA").

25      25.     Plaintiff's collective bargaining agreements satisfy the requirements of
26  Section 514, for the reasons below.

27      26.     First, the 2024-2029 TForce Agreement and 2019-2024 UPS Freight
28  Agreement set forth Plaintiff's wages, hours of work, and working conditions, including

the payment of premium wage rates for all overtime hours worked. *See generally,* **Exhibits D and E**.

27.    Second, Plaintiff's wages were 30 percent more than the applicable state minimum wage throughout the limitations period. During the relevant period, the wage rates provided in the 2024-2029 TForce Agreement and 2019-2024 UPS Freight Agreement for Plaintiff and similarly situated employees specifically exceeded 130 percent of the applicable state minimum wage. *See* **Exhibits D and E**, Articles 17.[1]

28.    Because Plaintiff was subject to collective bargaining agreements that satisfy the requirements of Section 514, Plaintiff's overtime claim is preempted under Section 301 of the LMRA, and this Court has subject matter jurisdiction over Plaintiff's overtime claim pursuant to 28 U.S.C. § 1331.

### 4.    Plaintiff's Claim For Unreimbursed Business Expenses Is Preempted By Section 301 Of The LMRA

29.    Plaintiff's eighth cause of action for allegedly unreimbursed business expenses under Labor Code § 2802 is preempted under Section 302 of the LMRA because adjudication of the claims is "substantially dependent" on interpretation of Plaintiff's respective collective bargaining agreements. *Curtis*, 913 F.3d at 1153.

30.    Section 2802(a) provides that: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Labor Code § 2802(a).

31.    Plaintiff's collective bargaining agreements address whether Plaintiff was required to purchase job or business-related items. Accordingly, the Court will need to analyze and interpret various provisions of his collective bargaining agreements to determine whether any expenses incurred by Plaintiff were "necessary" or "in direct

---

[1] California minimum wage history between October 2021 and the present may be found at https://www.dir.ca.gov/dlse/faq_minimumwage.htm (last viewed Dec. 2, 2025).

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

*Hunton Andrews Kurth LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071*

consequence of the discharge of his or her duties" and, therefore reimbursable pursuant to Labor Code § 2802. For example, Articles 18 of the 2024-2029 TForce Agreement and 2019-2024 UPS Freight Agreement provide that TForce "shall furnish all tools, instruments and equipment other than tools normally defined as hand tools" and that TForce "shall be responsible for replacing employee's [*sic*] personal tools" under certain circumstances. *See* **Exhibits D and E**, Articles 18. Moreover, Articles 30 state that TForce shall provide employees with "rain gear" if the employee's job duties cause him or her to be regularly exposed to the elements. *See* **Exhibits D and E**, Articles 30. The Court will need to interpret whether these CBA provisions render Plaintiff's decision to spend personal funds on such items are "necessary" in the course of his work. That interpretation renders Plaintiff's claims inextricably intertwined with the CBAs and subject to preemption.

32.    Because Plaintiff's claim will require interpretation of various provisions of his collective bargaining agreements, Plaintiff's unreimbursed business expenses claim is preempted by Section 301 of the LMRA.

### 5.    Plaintiff's Derivative Claims Are Likewise Preempted

33.    Because Plaintiff's second (unpaid overtime), fifth (untimely wages during employment), and eighth (expenses) causes of action are each preempted by Section 301, the derivative claims based in whole or in part on those alleged violations— including Plaintiff's sixth (non-compliant wage statements), seventh (untimely final wages), and ninth (UCL § 17200) causes of action—are also preempted. *Estrada v. Kaiser Found. Hosps.*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) ("[S]ince Plaintiffs allege in their complaint that the sections 222 and 226 violations form the basis of Plaintiffs' UCL claim, the UCL claim is derivative of the sections 222 and 226 claims. Given that the sections 222 and 226 claims are preempted, the derivative UCL claim also fails."); *Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1016 (C.D. Cal. 2022) (derivative claims preempted by Section 301).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

**B.    The Court May Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims**

34.    The Court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims that are not preempted by the LMRA because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a). *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together.").

**C.    This Court Also Has Original Diversity Jurisdiction Under CAFA**

35.    The Class Action is also a civil action over which this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified as 28 U.S.C. §§ 1332(d), 1453, 1711-1715). Pursuant to CAFA, federal courts have original jurisdiction over a class action if: (i) it involves 100 or more putative class members; (ii) any class member is a citizen of a state different from any defendant; and (iii) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d).

36.    As set forth more fully below, this Court has subject matter jurisdiction over this putative class action because this action meets the requirements set forth in 28 U.S.C. § 1332(d). More specifically: (i) there are more than 100 members in Plaintiff's proposed class; (ii) Plaintiff and members of the putative class have a different citizenship than TForce; and (iii) the amount at issue on the claims of the proposed class exceeds the sum or value of $5 million in the aggregate, exclusive of interest and costs. Thus, this Court has subject matter jurisdiction over this action on this alternative basis as well.

**1.    This Class Action Involves More Than 100 Putative Members**

37.    The requirement that Plaintiff's proposed class have more than 100 members is met here. Specifically, Plaintiff proposes a class consisting of "[a]ll current

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

1    and former hourly-paid and/or non-exempt employees who worked for Defendants in

2    the State of California at any time during the period from four years prior to the date of

3    the filing of this Complaint through final judgment." (Compl. ¶ 24.)[2]

4        38.    Between October 24, 2021 and the present, TForce employed in excess of

5    100 non-exempt employees in California.

6        **2.    The Diversity Of Citizenship Requirement Is Satisfied**

7        39.    The required diversity of citizenship also exists. Under CAFA, diversity

8    exists if "any member of a class of plaintiffs is a citizen of a State different from any

9    defendant." 28 U.S.C. § 1332. Here, at least one Plaintiff and/or member of the putative

10   class is a citizen of a different state than TForce.

11       40.    Plaintiff is a citizen and resident of the State of California. Plaintiff holds

12   a California driver's license, has family living in California and records show Plaintiff

13   has lived in California for at least 20 years. During his employment with TForce,

14   Plaintiff lived at an address in Palmdale, California and Plaintiff appears to continue to

15   reside at that address and has an intent to remain in California. At all relevant times,

16   Plaintiff has resided and been domiciled in California (*see* Compl. ¶ 9) and he intends

17   to remain a resident of California. Thus, for purposes of diversity jurisdiction, Plaintiff

18   is a citizen of California.[3] *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th

19   Cir. 1983).

20       41.    TForce is <u>not</u> a citizen of California. Pursuant to 28 U.S.C. § 1332(c)(1),

21   "a corporation shall be deemed to be a citizen of any State by which it has been

22   incorporated and of the State where it has its principal place of business." The phrase

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

---

[2] Plaintiff also proposes a "Former Employee Sub-Class" defined as "[a]ll former hourly-paid and/or non-exempt employees who worked for Defendants in the State of California at any time during the period from four years prior to the date of the filing of this Complaint through final judgment." (Compl. ¶ 25.)

[3] In addition, the putative class includes current employees of TForce who presently reside in California and who intend to remain in California and continue working for TForce in California.

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

"principal place of business" in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high-level officers direct, control, and coordinate the corporation's activities, *i.e.*, its "nerve center," which typically will be found at its corporate headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

42.    TForce is incorporated in Virginia and its principal place of business is Virginia. Henrico, Virginia is where TForce's corporate headquarters are located, and from where its high-level officers work and direct, control and coordinate TForce's activities. Thus, for removal purposes, TForce is a citizen of Virginia, <u>not</u> California.

43.    Although Plaintiff has also named as defendants Does 1 through 25, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1); *see also Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of "Doe" defendants does not deprive the Court of jurisdiction.

44.    Accordingly, at least one Plaintiff and/or member of the putative class has a different citizenship than TForce and, therefore, the requisite minimal diversity of citizenship exists, pursuant to 28 U.S.C. § 1332(d).

### 3.    The Amount in Controversy Requirement Is Satisfied

45.    The amount in controversy also exceeds the requisite sum or value of $5 million, exclusive of interest and costs. Where removal is based on diversity of citizenship and the complaint seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the amount in controversy," 28 U.S.C. 1446(c)(2), and a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co*, 574 U.S. at 89; *Moe v. GEICO Ind. Co.*, 73 F.4th 757, 761-62 (9th Cir. 2023) (defendant need only make a plausible allegation that the amount in controversy exceeds the jurisdictional threshold); *Arias v. Residence Inn By Marriott, Ltd.*, 936 F.3d 920, 922 (9th Cir. 2019) (in CAFA removal cases, "a removing defendant's notice of

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL

removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements.") (internal quotations omitted); *see also Garcia v. William Scotsman, Inc.*, 2024 WL 4289895, at *2 (C.D. Cal. Sept. 25, 2024).

46.    Because the Complaint does not specify the amount of damages sought, TForce need only plausibly allege the facts that support a finding of the requisite amount in its Notice of Removal. *Arias*, 936 F.3d at 922; *see also Dart Cherokee*, 574 U.S. at 89. If the plaintiff contests these allegations, evidence establishing the amount in controversy is required in connection with a motion to remand. *Ibarra v. Manheim Invests., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

47.    In measuring the amount in controversy, the Court must assume that the allegations of the Complaint are true and that a jury will return a verdict in favor of the plaintiffs on all claims asserted in the Complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is the amount that is put "in controversy" by the Complaint, and not how much, if anything, the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (citing *Schere v. Equitable Life Assur. Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint).

48.    Although TForce denies the validity and merit of Plaintiff's claims and allegations, and denies that Plaintiff or the putative class he seeks to represent are entitled to any relief, Plaintiff's claims establish an amount "in controversy" in excess of the jurisdictional minimum of five million dollars, exclusive of interest and costs, as set forth below.

a.    *Failure to Pay Wages Timely During Employment*. Plaintiff alleges potential class members were not paid wages during their employment "within the period permissible under California Labor Code section 204." Compl. ¶ 73. Penalties available under the California Labor Code for violation of Section 204 are provided

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

1   through Section 210 and amount to one hundred dollars ($100) for each failure to pay

2   each employee for any initial violation, and two hundred dollars for each failure to pay

3   each employee for each subsequent violation or for any willful or intentional violation.

4   Labor Code § 210(a). Here, Plaintiff alleges each violation was intentional and willful

5   (Compl. ¶ 73), and thus, it is reasonable to assume, based on the allegations of the

6   Complaint and solely for purposes of calculating the amount in controversy, that the

7   amount in controversy with respect to Plaintiff's fifth cause of action exceeds

8   **$4,050,000**. This figure is conservatively calculated by multiplying the average count

9   of wage statements per non-exempt employee during the limitations period from

10  October 24, 2024 to present (at least 45), the number of non-exempt employees in the

11  putative class during this period (at least 900), and the "initial violation" rate ($100).

12  Indeed, the amount in controversy would likely be higher if penalties of $200 for each

13  subsequent wage statement violation were assumed. *See* Labor Code § 210(a).

14      **b.**    *Failure to Provide Accurate Itemized Statements*. Plaintiff's sixth

15  cause of action alleges failure to provide complete and accurate wage statements to

16  "Plaintiff and the other Class Members." Compl. ¶ 78. Although he alleges other

17  deficiencies may exist, Plaintiff states TForce's violation arises due to the failure to

18  "provide the accurate number of total hours worked on wage statements," making this

19  claim derivative of Plaintiff's first (Unpaid Minimum Wage), second (Unpaid

20  Overtime), and third and fourth (Work During Meal and Rest Periods) causes of action.

21  Under Labor Code Section 226(e), in the absence of a good faith dispute or intentional

22  violation, an employer owes $50 per initial pay period and $100 for each subsequent

23  pay period when it fails to provide complete and accurate wage statements to employees

24  as required, with a maximum penalty of $4,000 per employee. Because Plaintiff's

25  allegation that TForce failed to provide accurate itemized wage statements is derivative

26  of Plaintiff's claims, including unpaid minimum wages and overtime, and due to the

27  Complaint's "broadly-worded averments" that TForce systematically violated the

28  Labor Code, Defendant's calculations for wage statement violations are reasonable. *See*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

*Fong v. Regis Corp.*, 2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014); *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1218 (N.D. Cal. 2019) (reasonable assumption that class members "virtually all hold wage statement penalty claims"); *Wicker v. ASC Profiles LLC*, 2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021). Indeed, given that Plaintiff's Complaint alleges a multitude of claims and a high frequency of Labor Code violations, it is fair to assume Plaintiff is seeking damages for an alleged violation of Labor Code 226(a) for each wage statement for the relevant period. *See* Compl. ¶¶ 34 ("frequently" required off-the-clock work); 44 ("regularly" worked more than 8 hours in a day, 40 hours in a week, 7 days in a week and off-the-clock work pushed into overtime); 44 (TForce mischaracterized overtime as straight time and refused to include all remuneration in overtime rate, which would affect every wage statement with overtime earned and some with recorded hours less than the overtime threshold); 54 (Plaintiff and class members were allegedly restricted from leaving premises during lunch, which suggests a 100% meal period violation rate); 63 ("routinely" required to work qualifying shifts without a rest break); 65 (non-compliant rest breaks due to late, interrupted or short, "if [taken] at all," suggesting 100% rest break violation); and 67 ("no policy or practice" to pay rest break premiums, suggesting 100% violation rate). TForce reasonably calculates the amount in controversy on Plaintiff's wage statement violation claim as at least **$2,250,000** which is conservatively calculated by multiplying the estimated number of wage statements issued to putative class members between October 24, 2024 and the present (the time period applicable to Plaintiff's wage statement claim for penalties) by $50 (at least 45,000 wage statements issued during the applicable time period x $50 = $2,250,000).

      **c.**    *Attorneys' Fees*. When the underlying substantive law provides for an award of attorneys' fees, a party may include that amount in their calculation of the amount in controversy. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be

included in the amount in controversy."); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 979 (9th Cir. 2005) ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract."). Plaintiff's Complaint requests attorneys' fees in this action. Applying the 25% attorneys' fee benchmark to Plaintiff's claims for inaccurate wage statements adds at least **$562,500** to the amount in controversy in this case. *See, e.g., Garibay v. Archstone Cmtys. LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013) (noting 25% benchmark award for attorneys' fees for the purpose of calculating the amount in controversy).

49.    <u>**Total Amount In Controversy.**</u> Based on the foregoing, it is apparent that the amount in controversy requirement is plainly met, and removal to this Court is proper. For the convenience of the Court, the amounts in controversy solely based on Plaintiff's allegations are depicted below:

| <u>Cause of Action</u> | <u>Amount in Controversy</u> |
|---|---|
| Untimely Wages During Employment | $4,050,000 |
| Wage Statements | $2,250,000 |
| Attorneys' Fees (based on claims inaccurate wage statements only) | $562,500 |
| **TOTAL:** | **$6,862,500** |

50.    Further, the above calculations do not ascribe any amount in controversy to other claims asserted in the Complaint. In addition to those discussed above, Plaintiff also asserts claims for: unpaid minimum wages, unpaid overtime, meal break violations, rest break violations, untimely final wages, failure to reimburse business expenses, and violation of Cal. Business & Professions Code § 17200, *et seq.* Plaintiff seeks additional damages and/or penalties on each of these claims which would increase the amount in controversy.

51.    Using conservative assumptions that are reasonable in light of the allegations of the Complaint, it is apparent that **it is more likely than not that the total**

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

**amount in controversy exceeds $5 million.** Accordingly, the amount in controversy requirement for federal jurisdiction under CAFA is satisfied.

WHEREFORE, TForce hereby removes this State Action from the Superior Court of California, County of Alameda, to this Court, pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446, and 1453.

DATED:  December 4, 2025                    HUNTON ANDREWS KURTH LLP


By:/s/ Emily Burkhardt Vicente
                                            Emily Burkhardt Vicente
                                            Michael A. Pearlson
                                            Attorneys for Defendant
                                            TFORCE FREIGHT, INC.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

DEFENDANT TFORCE FREIGHT, INC.'S NOTICE OF REMOVAL